UNITED STATES of America, Plaintiff–Appellant,

v.

Rondell BATES, Defendant–Appellee.

No. 95–5507.

United States Court of Appeals, Sixth Circuit.

Argued March 14, 1996.

Decided May 28, 1996.

Victor L. Ivy (argued and briefed), Office of U.S. Atty., Memphis, TN, for U.S.

Joseph T. Townsend (argued and briefed), Office of Federal Public Defender, Memphis, TN, for Rondell Bates.

Before: KEITH, NELSON, and SILER, Circuit Judges.

KEITH, Circuit Judge.

The Plaintiff–Appellant, the United States Government, appeals the district court's order granting the Defendant–Appellee, Rondell Bates', motion to suppress evidence obtained during the execution of a search warrant. For the reasons stated below, we **AFFIRM** the decision of the district court.

## I. Statement of the Case

On September 30, 1994, members of the Shelby County Sheriff's Department Narcotics Division ("Narcotics Division") executed a search warrant at 5999 North Littlebrook Circle, Apartment 201, Memphis, Tennessee ("Apartment"). The lease to the Apartment was in the name of Jimmy and Essence Bates. The Narcotics Division obtained the search warrant based on information they received from an informant, Kraig Boddie ("Boddie"). Boddie informed officers of the Narcotics Division he had been in the Apartment when Jimmy Bates and Winston Bennett ("Bennett") had received and sold drugs. Boddie also informed Shelby County Sergeant Martin Dunbar ("Sergeant Dunbar") that a multiple kilogram cocaine shipment would soon be delivered to Rondell Bates, Jimmy Bates and Bennett (together "Defendants"). In addition, Boddie told Sergeant Dunbar he had seen a firearm in the Apartment, on top of the refrigerator and that the Defendants had barricaded the front door with a two by four.

Based on the information provided by Boddie, the Narcotics Division applied for and received a warrant to search the Apartment. On the morning of September 30, 1993, Narcotics Division officers established video surveillance of the Apartment. Surveillance officers observed Rondell Bates arrive at the Apartment carrying a large cardboard box, which the officers suspected contained the anticipated cocaine shipment. This suspicion was confirmed by Boddie, who informed Sergeant Dunbar that one of the Defendants told him by phone that a cocaine shipment of fifteen kilograms had arrived. He told Sergeant Dunbar the Defendants had opened the cocaine packages for testing.

In order to execute the warrant, the plan was that some of the officers would use a ladder to gain access to the Apartment through the second floor balcony. The rest of the officers were to bang on the front door, with a battering ram, to draw the attention of those inside the Apartment away from the officers entering via the balcony. However, the officers, prior to ascending the ladder in the Apartment, observed Jimmy Bates standing on the balcony. The officers determined Jimmy was acting as a lookout while those inside the Apartment were testing the cocaine shipment.

On the evening of the 30th, the Narcotics Division executed their prearranged plan. The officers entered the Apartment without knocking as the other group of officers ascended the ladder to the second floor balcony. The officers ascending the balcony announced they were law enforcement officers as they were climbing up the ladder. As the officers started coming up the ladder, Jimmy Bates ran into the apartment and then back out onto the balcony where he was arrested in possession of a .32 caliber pistol. When the officers began ramming the door, Rondell Bates ran out of the apartment onto the balcony where he also was apprehended. Inside the Apartment, Sergeant Dunbar discovered fifteen kilograms of cocaine at the end of the couch with a firearm in the immediate vicinity.

The video surveillance of the front door entry verified that the officers executing the warrant did not knock and announce their presence before breaking down the door to the Apartment. The video also shows it took the officers entering the Apartment through the front door less than ten seconds to open the door, despite the reported barricade.

On October 17, 1994, the Defendants were indicted by a Federal Grand Jury for the Western District of Tennessee. The three count indictment charged the Defendants with a variety of narcotics related crimes. Count One charged them with conspiring to possess cocaine with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 946. Count Two charged the Defendants with aiding and abetting each other in the possession of cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The final count charged Rondell and Jimmy Bates with carrying and using a firearm during the commission of a drug trafficking crime, in violation of 18 U.S.C. § 924(e).

Rondell Bates filed a motion to suppress the evidence obtained during the execution of the search warrant. He asserted that the Narcotic Division officers' failure to knock and announce their presence before entering the apartment rendered the subsequent search of the Apartment unconstitutional.

A federal magistrate judge held a suppression hearing on January 20, 1995. On January 31, 1995, the magistrate judge filed a report recommending that Rondell Bates' motion to suppress be denied. The magistrate judge found the circumstances surrounding the execution of the warrant were exigent thereby excusing compliance with the requirement that they knock and announce their presence. Rondell promptly filed objections to the magistrate judge's report.

At the magistrate judge's suppression hearing, Sergeant Dunbar testified that the officers executing the search warrant did not announce their presence and purpose out of fear the Defendants would dispose of the cocaine before the officers could enter the Apartment. Sergeant Dunbar further testified that the possible presence of a weapon in the Apartment was an additional factor in the decision to enter the Apartment without first knocking and announcing. However, Sergeant Dunbar also testified he believed it was highly unlikely anyone could have disposed of fifteen kilograms of cocaine in the time it would have taken the officers to enter the Apartment after knocking and announcing their presence. In addition, Sergeant Dunbar told the magistrate judge he had no information or facts indicating the Defendants were violent and would use a weapon when confronted by law enforcement personnel.

On March 1, 1995, the district court issued its opinion denying Rondell Bates' motion to suppress on different grounds from those relied on by the magistrate judge. The district court denied Rondell Bates' motion to

suppress after determining Rondell did not have standing to challenge the execution of the search warrant because did he not reside at the Apartment. Since the district court denied the motion to suppress based on Rondell Bates' lack of standing, its opinion contained no discussion of whether exigent circumstances excused compliance with the knock and announce requirement.

On March 6, 1995, the district court reconsidered Rondell Bates' motion to suppress and held a hearing to determine whether Rondell Bates had standing to challenge the execution of the search warrant. After finding Rondell Bates did have standing to challenge the search, the district court orally granted the motion to suppress. A written order, granting the motion to suppress was entered on March 9, 1995. The district court found the officers' fear that the Defendants would dispose of the cocaine was unreasonable and did not eliminate the need for the officers to knock and announce their presence before entering the Apartment. The district court reasoned "it would be real difficult to dispose of 15 kilograms of cocaine before [the officers] made a knock and announce entry." In addition, the district court found that the possibility a weapon was in the apartment did not create an exigency because there was no indication the Defendants would use the weapon and place the officers' safety at risk.

The government filed a timely notice of interlocutory appeal.

## II. Discussion

The government claims the district court erred by granting Rondell Bates' motion to suppress. It claims there were sufficient exigent circumstances to warrant an entry not first accompanied by an announcement of the officers' presence and authority.

 This Court reviews a district court's legal conclusions with respect to a motion to suppress *de novo*. *United States v. Radka,* 904 F.2d 357, 361 (6th Cir.1990); *United States v. Maden,* 64 F.3d 1505, 1508 (10th Cir.1995). However, the "district court's factual findings on the existence of exigent circumstances will be disturbed only

if they are clearly erroneous." *Radka,* 904 F.2d at 361. In addition, we must "review the evidence in the light most likely to support the district court's decision." *United States v. Roark,* 36 F.3d 14, 16 (6th Cir.1994) (quoting *United States v. Williams,* 962 F.2d 1218, 1221 (6th Cir.), *cert. denied,* 506 U.S. 892, 113 S.Ct. 264, 121 L.Ed.2d 194 (1992)). The government bears the burden of proving exigent circumstances existed. *Id.* at 17; *Maden,* 64 F.3d at 1509.

Title 18, United States Code, section 3109 states:

> An officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109 (1985). Thus, law enforcement officers must knock and announce their presence and authority before entering a residence to execute a warrant. *See Miller v. United States,* 357 U.S. 301, 313, 78 S.Ct. 1190, 1197–98, 2 L.Ed.2d 1332 (1958); *United States v. Nabors,* 901 F.2d 1351, 1354 (6th Cir.), *cert. denied,* 498 U.S. 871, 111 S.Ct. 192, 112 L.Ed.2d 154 (1990). As recognized by other Circuits addressing this issue, the interests protected by § 3109 include: "(1) the reduction of potential for violence to both the police officer and the occupants of the house into which entry is sought; (2) the needless destruction of private property; and (3) a recognition of the individual's right to privacy in his [or her] house." *See, e.g., United States v. Brown,* 52 F.3d 415, 421 (2d Cir.1995), *cert. denied,* ── U.S. ──, 116 S.Ct. 754, 133 L.Ed.2d 701 (1996).

 However, because § 3109 is a federal statute it is not intended to govern the actions of state law enforcement personnel. *United States v. Gatewood,* 60 F.3d 248, 249 (6th Cir.), *cert. denied,* ── U.S. ──, 116 S.Ct. 546, 133 L.Ed.2d 448 (1995) (citing *United States v. Moore,* 956 F.2d 843, 847 (8th Cir.1992)); *United States v. Murphy,* 69 F.3d 237, 242 (8th Cir.1995), *cert. denied,* ── U.S. ──, 116 S.Ct. 1032, 134 L.Ed.2d 109 (1996). When a court is faced with reviewing

state law enforcement activities during the execution of a warrant, it must evaluate those actions in light of the Fourth Amendment's reasonableness requirement.[1] *Wilson v. Arkansas,* ── U.S. ──, ──, 115 S.Ct. 1914, 1916, 131 L.Ed.2d 976 (1995). The Supreme Court has found that absent exigent circumstances, it is unreasonable for officers to enter a dwelling without first knocking and announcing their presence. *Id.* at ──, 115 S.Ct. at 1918. Thus, unless exigent circumstances exist, the failure of state law enforcement officials to knock and announce their presence will render the evidence procured during the ensuing execution of a warrant inadmissible. *See United States v. Finch,* 998 F.2d 349, 354 (6th Cir.1993) (holding evidence obtained during knockless execution of a search warrant should not be suppressed because exigent circumstances existed); *United States v. Becker,* 23 F.3d 1537, 1541–42 (9th Cir.1994) (holding evidence obtained during the execution of a search warrant where the police failed to knock and announce should be suppressed because no exigent circumstances existed).

◼ This Circuit has determined exigent circumstances exist when: "(1) the persons within already know of the officers' authority and purpose; (2) the officers have a justified belief that someone within is in imminent peril of bodily harm; or (3) the officers have a justified belief that those within are aware of their presence and are engaged in escape or the destruction of evidence." *Finch,* 998 F.2d at 353 (quoting *United States v. Francis,* 646 F.2d 251, 258 (6th Cir.), *cert. denied,* 454 U.S. 1082, 102 S.Ct. 637, 70 L.Ed.2d 616 (1981)). However, officers must have more than a mere hunch or suspicion before an exigency can excuse the necessity for knocking and announcing their presence. *Radka,* 904 F.2d at 362; *see United States v. Stewart,* 867 F.2d 581, 585 (10th Cir.1989). Courts will closely scrutinize officers making a forced entry without first adequately announcing their presence and purpose. *Nabors,* 901 F.2d at 1355.

◼ In this case, the government concedes the officers executing the warrant did not knock and announce their presence before entering the Apartment. The government, however, contends the officers executing the search warrant were confronted with exigent circumstances excusing the requirement they adequately announce their presence and purpose. It is argued by the government that because the Defendants were alleged to be in possession of a handgun, were likely to destroy the cocaine and had barricaded the front door, exigent circumstances were present and excused the need to knock and announce their presence.

◼ The presence of a weapon creates an exigent circumstance, provided the government is able to prove they possessed information that the suspect was armed and likely to use a weapon or become violent. *Nabors,* 901 F.2d at 1354; *see Murphy,* 69 F.3d at 242; *Becker,* 23 F.3d at 1540; *United States v. Marts,* 986 F.2d 1216, 1218 (8th Cir.1993); *Stewart,* 867 F.2d at 584; *United States v. Spinelli,* 848 F.2d 26, 30 (2d Cir. 1988). Evidence that firearms are within a residence, by itself, is not sufficient to create an exigency to officers when executing a warrant. *Nabors,* 901 F.2d at 1354; *Murphy,* 69 F.3d at 242; *Marts,* 986 F.2d at 1218. However, threats to an officer's safety, a criminal record reflecting violent tendencies, or a verified reputation of a suspect's violent nature can be enough to provide law enforcement officers with justification to forego the necessity of knocking and announcing their presence. *Nabors,* 901 F.2d at 1354.

The *Nabors* court excused compliance with § 3109 where the record showed the defendant was a felon in possession of a firearm and habitually wore a bullet-proof vest. *Id.* The court warned, however, that it was the solemn duty of the judicial system to ensure the right of each citizen to be free from

---

1. The Fourth Amendment to the United States Constitution states:

 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

 U.S. Const. amend. IV.

unreasonable searches by forcing the government to prove the existence of exigent circumstances before excusing the knock and announce requirement. *Id.* at 1354. The *Nabors* court stated "we do not hold that every time law enforcement personnel suspect that the subject of a search warrant possesses a firearm ... a forced entry sufficiently complies with 18 U.S.C. § 3109." *Id.*

Other Circuits have suppressed evidence in situations where the government could not provide specific facts that a particular suspect was both armed and dangerous. *Becker*, 23 F.3d at 1541; *Stewart*, 867 F.2d at 584. In *Becker*, the Ninth Circuit held exigent circumstances could not rest on generalized and non-specific fears. *Becker*, 23 F.3d at 1541. The *Becker* court concluded that the fact some members of an alleged drug distribution ring had weapons in their homes was not enough to show the subject of their search warrant had a weapon in his home and posed a danger to the police. *Id.*

In *Stewart*, the Tenth Circuit suppressed evidence obtained by the police after they executed a search warrant without first announcing their presence and authority. *Stewart*, 867 F.2d at 584. The police never attempted to knock on the defendant's door before breaking it down and lobbing a stun grenade into the apartment. *Id.* at 583. The police based their exigent circumstances claim on the fact an informant had reported the presence of a handgun in the apartment and on the fact the defendant was of Jamaican descent and thus, should have been considered dangerously violent. *Id.* at 584. In reversing and remanding the denial of the defendant's motion to suppress, the *Stewart* court concluded the officers' basis for claiming exigent circumstances was not reasonable because the police could not provide the court with any reasonable and specific basis showing the defendant was dangerous. *Id.*

In the instant case, we find nothing in the record indicating anyone inside the Apartment was dangerously armed and prone to violence. While the officers had been informed by Boddie there was a handgun inside the Apartment, Boddie never told the officers that the Defendants were violent and likely to use a weapon if confronted by law enforcement personnel. In addition, there is no evidence showing the Defendants had a criminal history of violence or a reputation indicating they were likely to be violent. None of the Defendants had a criminal record for violent crimes and none of the Defendants had threatened violence against any law enforcement official who attempted to interfere with their drug selling business. Thus, there was no reasonable basis for the Narcotics Unit to claim they were faced with a situation where their safety was placed in jeopardy due to the presence of a handgun in the apartment.

■■■■■■ The possibility that an individual may destroy drug evidence can also create exigent circumstances. *Radka*, 904 F.2d at 362. However, the government must prove they had "a reasonable belief that the loss or destruction of evidence [was] imminent." *Id.* The mere possibility or suspicion that a party is likely to dispose of evidence when faced with the execution of a search warrant is not sufficient to create an exigency. *Id.*; *Becker*, 23 F.3d at 1541. Nor is the generalized and often recognized fear that destruction of evidence is an inherent possibility during the execution of a warrant adequate grounds to find exigent circumstances, *Becker*, 23 F.3d at 1541, although this is more likely to be accepted when the drugs are in easily disposable quantities. *See, e.g., United States v. Kennedy*, 32 F.3d 876, 882 (4th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995) (citing *United States v. Moore*, 956 F.2d 843, 850 (8th Cir.1992)).

■■■■■ The government's contention that exigent circumstances were present because they feared the cocaine would be destroyed lacks merit. As the district court noted, it is unreasonable to think that fifteen kilograms of powder cocaine could be quickly disposed of by flushing it down the toilet or dumping it down the sink drain. This point was conceded by Sergeant Dunbar during his testimony at the suppression hearing. He testified it was highly unlikely the Defendants would have had time to dispose of fifteen kilograms of powder cocaine in the time it would have taken the officers to knock and announce their presence. Additionally, there is no evidence indicating the Narcotics Unit

had any information the Defendants were likely to dispose of the drugs or any other evidence in an effort to avoid arrest.

 Finally, the barricading of the Apartment's front door did not create an exigent circumstance. Although a barricade may be considered a relevant factor in determining whether exigent circumstances are present, *see Stewart,* 867 F.2d at 585, here the officers possessed no information indicating that the barricade would create a serious impediment to their quick entry into the Apartment or place their safety in peril. Indeed, even if the barricade had created an impediment there still would not be an exigent circumstance because the officers' prearranged plan called for the main point of entry into the Apartment to be through the balcony. The banging on the front door was merely intended to be a ploy to divert the attention of those inside the Apartment away from the officers entering through the balcony. Thus, the barricade, in the instant case, could not have been a serious hinderance to the officers' attempts to access the Apartment.

As a result, based on the information within the knowledge of the Narcotics Unit when they arrived at the Apartment to execute the search warrant, there is no basis upon which this court could find exigent circumstances existed. The existing case law, from this and other Circuits, and the undisputed facts on the record, make it clear no exigency existed which excused the Narcotics Unit from knocking and announcing their presence before forcibly entering the Apartment.

### III. Conclusion

For the reasons stated above, we **AFFIRM** the decision by the Honorable Jerome Turner, United States District Court Judge for the Western District of Tennessee, to grant Rondell Bates' motion to suppress the evidence obtained during the execution of the search warrant.