GRIFFIN, Circuit Judge,
concurring in the judgment.
I agree with the majority in most respects and concur in the judgment. I write separately to respectfully disagree with the majority’s conclusion regarding the lawfulness of the officers’ warrantless entry into the residence. In my view, the entry was not justified by exigent circumstances and thus violated the Fourth Amendment. However, despite the lack of exigent circumstances, I concur in the result because the residence’s tenant consented to the search. Accordingly, the district court did not err by denying defendants’ motion to suppress. I join in the remaining sections of the majority’s opinion.
The Fourth Amendment provides that “[t]he right of the people to be secure in their ... houses ... against unreasonable searches and seizures, shall not be violated!.]” U.S. Const, amend. IV. And the Supreme Court has instructed that “physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.” Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (internal quotation marks omitted). Accordingly, warrantless entries into the home are “presumptively unreasonable” under the Fourth Amendment. Id. at 586, 100 S.Ct. 1371. However, this presumption of unreasonableness can be “overcome,” Michigan v. Fisher, 558 U.S. 45, 47, 130 S.Ct. 546, 175 L.Ed.2d 410 (2009) (per curiam), if the government can show that a warrantless entry was justified by the presence of exigent cir- *406 eumstances. United States v. McClain, 444 F.3d 556, 561 (6th Cir.2005).
Significantly, the Supreme Court has repeatedly emphasized that a finding of exigency is proper only where, under the circumstances, it would be unreasonable to require officers to obtain a warrant because they must act immediately and swiftly to prevent some serious harm. Missouri v. McNeely, — U.S.-, 133 S.Ct. 1552, 1559, 185 L.Ed.2d 696 (2013) (“[I]n each [area in which the Court has found an exigency,] a warrantless search is potentially reasonable because there is compelling need for official action and no time to secure a warrant.” (emphasis added, internal citation and quotation marks omitted)); Welsh v. Wisconsin, 466 U.S. 740, 751, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984) (exigent circumstances are “real immediate and serious consequences” that would occur if an officer “postponed action to get a warrant” (quoting McDonald v. United States, 335 U.S. 451, 460, 69 S.Ct. 191, 93 L.Ed. 153 (1948) (Jackson, J., concurring))).
Here, the majority notes the officers had a reasonable belief that (1) defendants were in the apartment, armed; and (2) defendants were participants in the series of motel robberies the officers had been investigating. These two factors form the primary basis on which the majority finds an exigency. However, the mere presence of weapons in a residence does not in itself create an exigency. United, States v. Johnson, 22 F.3d 674, 680 (6th Cir.1994). In United States v. Bates, this court held that the presence of weapons is sufficient to create an exigency only if the government is able to show that officers “possessed information” not only that a suspect was armed, but was “likely to use a weapon or become violent.” 84 F.3d 790, 795 (6th Cir.1996).
To that end, the majority relies on Causey v. City of Bay City, 442 F.3d 524, 529 (6th Cir.2006). There, officers entered a suspect’s fenced-in backyard and house without a warrant after reports that shots had been fired from the backyard; upon arrival, the officers knocked and no one answered. Id. at 526. This court reasoned that:
The officers’ confirmed information— that someone at the ... residence had fired a gun six times, that no one had entered or left the residence since the shots were fired, and that no one had answered the first knock at the door— made it reasonable for them to believe that someone inside the house was willing to use a weapon and thus that an exigent circumstance existed.
Id. at 529. Relying on Causey, the majority holds that the fact that the present defendants were suspects in the motel robberies was enough to infer defendants’ willingness to use the weapons they suspected were in the apartment. In my view, this is a strained reading of Causey and inconsistent with Bates. The Causey court recognized, consistent with Bates, that “willingness to use a weapon” required more than a generalized belief that the suspects had weapons and might be violent people — the standard requires that the government show some additional indi-cia that the suspects were about to use weapons or were about to otherwise act violently. Id.; see also Bates, 84 F.3d at 795 (no exigent circumstances found where, without more, officers reasonably believed that suspect was inside apartment with a gun). Unlike in Causey, here there were no shots fired, nor was there any evidence that defendants were “likely to use ... weapon[s] or become violent.” Bates, 84 F.3d at 795. In my view, the mere fact that defendants were suspects in the robberies does not, without more, establish their “willingness to use ... weapon[s]” as that concept was applied in Cau- *407 sey and Bates, nor does it otherwise give rise to a reasonable belief that “real immediate and serious consequences” would occur if the officers “postponed action to get a warrant.” Welsh, 466 U.S. at 751, 104 S.Ct. 2091.
Moreover, there was no reason to believe that defendants were about to harm anyone. The majority correctly notes that there was a child in the apartment with defendants. Defendant Evans is the child’s father. The child’s mother, Lak-endria Thompson, told the officers that her child was in the apartment and that she wanted them to remove the child from the apartment. However, she made this request only after the officers made clear that they were investigating defendants. To this end, the majority and I interpret the record quite differently. It is clear from my review of the record that Thompson was not fearful that defendants would harm her child. Rather, she was concerned that her child would be injured during the officers’ potential forceful entry into the apartment. Officer Bartlett confirmed as much at the suppression hearing when he testified that Thompson “wanted her child out of the apartment before we did anything.” (Emphasis added.) In this regard, the majority notes that Thompson was “worried about what would happen if there was a confrontation [between the police and defendants].” (Emphasis added.) There is simply no testimony in the record that Thompson was worried that defendants would harm the child, requiring immediate warrantless entry by the officers — that the officers were unaware that Evans was the child’s father at the time of the warrantless entry does nothing to change this fact. Accordingly, there is nothing in the record to indicate that the officers had reason to believe that the child would have been harmed if they had taken the time to obtain a warrant.
The majority also notes that the officers were concerned about the possibility that defendants might barricade themselves in the apartment. Although this court has acknowledged that the presence of a barricade “may be considered a relevant factor in determining whether exigent circumstances are present,” Bates, 84 F.3d at 797 (citing United States v. Stewart, 867 F.2d 581, 585 (10th Cir.1989)), here, there is no evidence that a barricade ever, in fact, occurred. The only evidence in the record regarding a barricade was the officers’ subjective speculation that one might occur. Moreover, even if there had in fact been a barricade, this court has previously found that the presence of a barricade alone is not enough to support a finding of exigency unless the officers possess additional “information indicating that the barricade would create a serious impediment to their quick entry into the apartment or place their safety in peril.” Bates, 84 F.3d at 797. Officer Bartlett testified that he was worried about a barricade situation “due to the violence of the robberies,” but did not identify any other reason why he was concerned about a barricade situation.
The majority also cites the potential destruction of evidence as a factor in support of a finding of exigency. Likely destruction of evidence is a recognized basis for an exigency. United States v. Radka, 904 F.2d 357, 362 (6th Cir.1990). However, the record is bereft of any evidence related to a concern over destruction of evidence. The officers did not testify that potential destruction of evidence was a concern of theirs, nor did the magistrate’s report and recommendation even mention this issue. The district court’s opinion and order adopting the report and recommendation also fails to mention destruction of evidence. It appears that the majority is basing its decision, in part, on its own mere speculation.
*408 In sum, I disagree with the majority that any of the facts support a finding of exigency. Nothing here was of such urgency or severity that the officers were excused from adhering to the Fourth Amendment’s general rule of obtaining a warrant before entering the apartment. See McNeely, 133 S.Ct. at 1559; Welsh, 466 U.S. at 751, 104 S.Ct. 2091 (1984).
However, even though I would hold that the officers’ entry into the apartment violated the Fourth Amendment, I would affirm the district court’s denial of the motion to suppress on the alternative basis of consent. As the majority correctly notes, once the officers were inside the apartment, the sole tenant, Kirby, gave the officers valid consent to search the premises. Kirby’s consent provided the officers with an independent constitutional basis on which to conduct their search; accordingly, suppression of the fruits of that search is not warranted. See Murray v. United, States, 487 U.S. 533, 541-43, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1987) (following officers’ illegal initial entry, a subsequently obtained valid warrant could provide an independent source for the search and seizure); United States v. Calhoun, 49 F.3d 231, 234-35 (6th Cir.1995) (following an initial illegal entry and sweep of an apartment, valid consent provided an independent source for the search and seizure). At oral argument, defendant Dunn’s counsel asserted that Kirby’s consent was not voluntary because at the time it was obtained the officers had already made their warrantless entry. However, in another case involving an unconstitutional entry and protective sweep, this court concluded that the defendant’s consent to search the premises was voluntary where, as here, she signed a consent form and there was no indication that she did not comprehend what the officers told her. Id. at 235. To the extent defendants have a remedy for any damages they incurred as a result of the officers’ unconstitutional warrantless entry, it is a Bivens[3] claim. In light of the valid consent the officers obtained, suppression of the evidence derived from the search is not warranted.
For these reasons, I concur in the judgment.

. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).